```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

GENEVIEVE CUNNINGHAM,           :
                                :
          Plaintiff,            :
                                :       HONORABLE JOSEPH E. IRENAS
     v.                         :
                                :       CIVIL ACTION NO. 03-4970 (JEI)
STATE OF NEW JERSEY, NEW        :
JERSEY DEPARTMENT OF            :              OPINION
CORRECTIONS, DEVON BROWN,       :
CHARLES LEONE, DONNA KLEPPER,   :
and CORRECTIONAL MEDICAL        :
SERVICES, INC.,                 :
                                :
          Defendants.           :
```

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
    By:  Frank L. Corrado
         Joseph C. Grassi
2700 Pacific Avenue
Wildwood, NJ  08260
    Counsel for Plaintiff


OFFICE OF THE ATTORNEY GENERAL DIVISION OF LAW
    By:  Noreen Patricia Kemether
R.J. Hughes Justice Complex
P.O. Box 112
25 East Market Street
Trenton, NJ  08625
    Counsel for Defendants State of New Jersey, New Jersey
         Department of Corrections, Devon Brown, Charles Leone,
         and Donna Klepper

ARCHER & GREINER PC
    By:  Tracy Asper Wolak
         Joel Schneider
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Counsel for Defendant Correctional Medical Services, Inc.

**IRENAS,** Senior District Judge:

Plaintiff, Genevieve Cunningham, brings this § 1983 action against Defendants State of New Jersey, New Jersey Department of Corrections (the "DOC"), Devon Brown (Commissioner of the DOC), Charles Leone (Administrator of Bayside State Prison), Donna Klipper[1] (Assistant Administrator of Bayside State Prison), and Correctional Medical Services, Inc. ("CMS")  The State of New Jersey, the DOC, and CMS are dismissed from this action with Plaintiff's consent.  (Pl. Br. pp 2-3)

Plaintiff's Complaint contains six counts of allegations. Count I alleges violation of her First Amendment rights.  Count II alleges civil rights conspiracy.  Counts III through VI alleges various state law claims.  The Court has subject matter jurisdiction over the § 1983 claims pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to 28 U.S.C. § 1343(a)(3).

Presently before the Court is the Motion for Summary Judgment by all Defendants except CMS.  For the reasons set forth below, the Motion for Summary Judgment will be granted with respect to Counts I and II, and the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] Misidentified as "Klepper" in the caption.

I.

Plaintiff is a registered nurse.  In 2002, she was employed as an HIV Specialist by South Jersey Aids Alliance ("SJAA"). (Cunningham Dep. at 14:19-15:3)  SJAA at the time had a contract with the DOC to provide counseling and education to prison inmates who have contracted, or were at risk of contracting, infectious disease.  (Compl. ¶ 13)  Plaintiff was assigned to work at Bayside State Prison.[2]  The program established by SJAA is called the "PALM Project."[3]  Plaintiff was a member of the project staff.

In July 2002, a Bayside inmate, Jose Lopez, enrolled in one of Plaintiff's health education risk reduction classes because the DOC informed him earlier that year that he was suffering from Hepatitis C.  (Cunningham Dep. at 17:24-25, 18:1; Pl. Ex. H)  On August 23, 2002, Mr. Lopez became one of Plaintiff's "prevention case management" clients.  (Cunningham Dep. at 20:23-21:9; 25:1-25:11)  Mr. Lopez told Plaintiff that he had made a request to CMS for his medical records, but CMS had not yet furnished him a copy.  (Id.)  After learning that fact, Plaintiff obtained Mr. Lopez's medical records from the records clerk and gave them to him.  (Cunningham Dep. at 28:5-21)  The file showed that Mr.

---

[2]   Although she worked in the prison system, Plaintiff was employed only by SJAA, not the State of New Jersey or the DOC.

[3]   PALM stands for "Positive Alternative to Life Management."

3

Lopez tested positive for Hepatitis C since 1992 but was never informed of it by the DOC until 2002. Mr. Lopez, along with many other inmates, is currently litigating against the DOC over this matter.

Plaintiff admitted that she knew about a prison policy requiring inmates to pay for copies of their medical records at the time when she handed the file to Mr. Lopez. (Cunningham Dep. at 74:3-21) However, Plaintiff did not collect any money from Mr. Lopez because she believed such payment was not required for filed obtained through the PALM Project. (Cunningham Dep. at 160:22-161:10)

Bayside State Prison considered Plaintiff's action a violation of its policy, and withdrew its permission for her to enter its facility. (Schneider Cert., Ex. 17) As result, Plaintiff was no longer able to work for the PALM Project. SJAA offered Plaintiff another position with lower pay, but Plaintiff refused it. As result, her employment at SJAA was terminated. (Amended Compl., ¶ 27)

Plaintiff and Defendants dispute whether Plaintiff's action was proper under the prison policy. Plaintiff claims that the PALM Project was supposed to be available to all inmates with any blood-related infectious diseases, including Hepatitis C. (Pl. Ex. C and D) According to Plaintiff, there was no written, published policy or procedures for PALM Project staff to follow

4

when obtaining inmate medical records.  There was only a generally accepted practice of asking CMS staff for the record, which was easily and readily available to the PALM Project.  (Pl. Ex. C at ¶ 6)  Giving the medical record to the inmate was also a common practice.  (Pl. Ex. D at ¶ 5)

In addition, Plaintiff claims that she obtained Mr. Lopez's record from CMS with his written consent, and that Mr. Lopez designated her as the person to receive his medical records on the request form.  (Pl. Ex. I, Official Medical Record Request Form)  Thus, Plaintiff alleges that she was banned from Bayside State Prison only because revelation of the DOC's failure to notify Mr. Lopez of his Hepatitis-positive status led to a lawsuit against the DOC.

Defendants, on the other hand, claim that Plaintiff worked as an HIV Specialist for SJAA and were only responsible for the HIV positive inmates and HIV prevention education.  (Cunningham Dep. at 15:3-9)  Thus, consulting Hepatitis patients was outside of Plaintiff's duties.

Furthermore, Defendants claim that in order to perform her duties properly, Plaintiff would only need the lab reports and certain medical information for the inmates who are HIV positive and would have no reason to obtain the medical records for the inmates who are not HIV positive.

Finally, Defendants claim three other instances of

5

Plaintiff's overstepping her bounds: (1) Plaintiff violated the prison sign-in/sign-out policy and was disciplined for it; (2) Plaintiff inappropriately provided a diagnosis of post-traumatic stress syndrom to an inmate under the care of one of the CMS physicians; and (3) Plaintiff accessed the CMS computer system (Logician) which she does not have permission to use.[4]  (Df. Br. p 2)   Plaintiff disputes these charges.   (Pl. Br. p. 11)

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitles to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)  (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson*

---

[4]  SJAA employees were not permitted to access CMS computers.  (Cunningham Dep. at 37:21-38:1, 254:20-25, 259:24-260:2)

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

## III.

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

In a § 1983 case, a court is required to consider, as a threshold question, whether the defendant has violated a plaintiff's constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  In a First Amendment retaliation case, the "plaintiff must first demonstrate that s/he engaged in protected activity, i.e. speech that addresses a matter of public concern.  *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006).

7

Plaintiff alleges that by denying her entry into the prison, Defendants have violated her First Amendment right to communicate and associate with her clients. (Amended Compl. ¶ 33) She cites *Conant v. Walters* for the preposition that the First Amendment protects the cognate rights of medical personnel to provide, and patients to obtain, essential health information. 309 F.3d 629, 637-78 (9th Cir. 2002).

However, *Conant* is distinguishable. In that case, the plaintiffs were patients suffering from serious illnesses, licensed California physicians who treat patients with serious illnesses, a patient's organization and a physician's organization. *Conant*, 309 F.3d at 633. The plaintiffs in *Conant* commenced the action in order to enjoin the enforcement of a federal government policy insofar as it threatened to punish physicians for communicating with their patients about the medical use of marijuana. *Id.* The district court entered a permanent injunction against the government because regulation of doctor-patient communications interfered with First Amendment interests. *Id.* at 634.

On appeal, the Ninth Circuit affirmed the permanent injunction, categorizing the government policy as falling between content and view-point discrimination. The Court reasoned that the government's policy "seeks to punish physicians on the basis of the content of doctor-patient communications... [T]he policy

8

does not merely prohibit the discussion of marijuana; it condemns expression of a particular viewpoint, i.e., that medical marijuana would likely help a specific patient. Such condemnation of particular views is especially troubling in the First Amendment context." *Conant*, 309 F.3d at 637. Thus, the permanent injunction against the government was an appropriate means to enforce the First Amendment.

In this case, the undisputed evidence does not establish that Plaintiff was engaging in a protected First Amendment activity, i.e. speech or expression. *See Springer*, 435 F.3d at 275. In order to qualify as an "expressive conduct" protected by the First Amendment, the Court must find that "[a]n intent to convey a particularized message was present, and [that] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

The Supreme Court relaxed its requirement of "particularized message" somewhat subsequent to *Johnson*. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995). "[A] narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' ... would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of

9

Lewis Carroll." *Id.* at 569. However, the Supreme Court had no need to formulate a new test because the dispute in *Hurley* involved a parade, which the Court considered an inherently expressive activity. *Id*. at 568; *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 159-60 (3d Cir. 2002).

By Plaintiff's account of the facts, she obtained the medical record because Jose Lopez asked her for it. (Cunningham Dep. at 25:1-23; 28:5-21) Specifically, Plaintiff in her deposition explained:

> Mr. Lopez told me that he had put in a request to CMS, he had not received the medical records, he was now in my prevention case management, I believe I was in the infirmary and Amanda [(the records clerk)] was there and I asked her if she got the request for the medical records and she said yes, that she was in the process of copying it. And I asked her to give it to me, and that I would have a – that I had a release from Mr. Lopez.

(Cunningham Dep. at 25:1-11)

The Court first notes that, unlike a parade, nothing is "inherently expressive" about this act. The Third Circuit has identified a series of cases in which the Supreme Court held that the conduct in question was "sufficiently imbued with elements of communication" to implicate the protection of the First Amendment. *See Tenafly Eruv Ass'n*, 309 F.3d at 158-59. In each instance, the conduct deemed expressive was inherently meaningful. Forms of protected conduct include flag burning,

10

affixing a peace symbol to an American flag, donning military uniform in a theatrical production, wearing black armbands, saluting the American flag, and displaying a symbolic flag.  *See id.* at 159.  These examples involve well-known communicative behaviors or distinctive attire.  While such behavior or dress is not a prerequisite to gain the protection of the First Amendment, these actors conveyed their subjective intent to communicate via conduct that had the unmistakable connotation of expression.

In contract, Plaintiff's act of providing an inmate with his medical files is not "imbued with elements of communication."  In addition, based on the above testimony, a reasonable fact finder could not draw an inference that Plaintiff had formed an expressive intent when she retrieved Mr. Lopez's medical record.  Rather, a reasonable reading of her deposition supports the inference that Plaintiff simply intended to aid Mr. Lopez to receive his medical record faster.

Even if the Court assumes that Plaintiff did in fact have an expressive intent, her argument would still fail the *Johnson* test because potential viewers of her actions are unlikely to understand her actions as expressing a message.  *See Johnson*, 491 U.S. at 404.  To a reasonable bystander, nothing about retrieving a patient's medical record and handing it to him coveys a particular message.  Although Mr. Lopez later filed a lawsuit against the DOC, and the allegation that the DOC withheld

11

Hepatitis status from the inmates received substantial media coverage (Pl. Ex. S), such media coverage is merely the effect of Plaintiff's actions.  Such an effect alone is insufficient to transform an non-expressive act into an expressive conduct.

Plaintiff has not articulated any constitutional or statutory right to enter Bayside State Prison.  Thus, she enters the prison only by virtue of the permission of the DOC.  It follows that withholding the permission violates no constitutional or statutory right.  Thus, the DOC can revoke its permission on an at-will basis.  In this sense, Plaintiff's presence in Bayside State Prison is akin to that of a licensee under the traditional common law analysis.  A licensee's presence is terminable at the will of the licensor.  <u>Restatement (First) of Property</u> § 519(1).

The record, construed in the light most favorable to Plaintiff, does not demonstrate that Defendants violated Plaintiff's rights under the First Amendment, the only Constitutional provision to which she alludes.  Therefore, Defendants are entitled to summary judgment as to Counts I  and II.

**IV.**

For reasons set forth above, with respect to Counts I and II, the Court will grant summary judgment in favor of all remaining Defendants.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims, Counts III through VI.  *See* 28 U.S.C. § 1367(c)(3); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 444 (3d Cir. 1997) (the decision to decline to exercise supplemental jurisdiction over a plaintiff's remaining state law claims "is committed to the sound discretion of the district court").  Thus, Counts III through VI will be dismissed without prejudice.  The Court will issue an appropriate order.


Date: September 25th, 2006


s/*Joseph E. Irenas*
JOSEPH E. IRENAS
Senior United States District Judge